UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
KRISTEN BERLY,

                                 Plaintiff,

         -against-

GRAMERCY CARDIAC DIAGNOSTIC SERVICES, P.C.,
PRACTICE BUILDERS MEDICAL MANAGEMENT, LLC,
DR. KLAUS PETER RENTROP, PAUL STROHMENGER,
CARLO DELLA RAGIONE, EILEEN KENNY, and
INFOLINK MANAGEMENT, INC.,

                               Defendants.
-----------------------------------------------------------------------X

Docket No.: 19-cv-8702

**COMPLAINT**

***PLAINTIFF DEMANDS A
TRIAL BY JURY***

The Plaintiff, KRISTEN BERLY ("Berly"), by her attorneys, Mitchell Pollack &

Associates, PLLC, as and for her Complaint in this action against the Defendants, GRAMERCY

CARDIAC DIAGNOSTIC SERVICES, P.C. ("Gramercy Cardiac"); PRACTICE BUILDERS

MEDICAL MANAGEMENT, LLC ("Practice Builders"); DR. KLAUS PETER RENTROP

("Dr. Rentrop"); PAUL STROHMENGER ("Strohmenger"); CARLO DELLA RAGIONE

("Della Ragione"); EILEEN KENNY ("Kenny"); and INFOLINK MANAGEMENT, INC.

("InfoLink"), respectfully alleges as follows:

## NATURE OF CLAIMS

1.     This action is brought to remedy discrimination on the basis of pregnancy and

gender/sex in the terms and condition of employment and in the creation of a hostile work

environment, as well as, retaliation for opposition to unlawful practices, in violation of Title VII

of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000, *et. seq.* ("Title VII"); the

Pregnancy Discrimination Act, 42 U.S.C. §2000e(k), *et. seq.* ("PDA"), the Family and Medical

Leave Act, 29 U.S.C. §2601, *et seq.* ("FMLA"); New York State's Paid Family Leave Insurance

Act, 12 N.Y.C.R.R. §380, *et. seq.* ("PFLIA"); the New York State Human Rights Law, New

York Executive Law, §290, *et. seq.* ("the Executive Law"); and The Pregnant Workers Fairness

Act ("PWFA"), codified in the New York City Human Rights Law ("NYCHRL"), New York

City Admin. Code § 8-107 *et seq.*; as well as any and all other local, state and/or federal causes

of action which are alleged and/or can be inferred from the facts set forth herein.

2.       The Plaintiff seeks injunctive and declaratory relief; monetary relief including,

but not limited to:  back pay, front pay, compensatory, liquidated damages and punitive

damages; attorney's fees and the costs of this action; and any and all other appropriate legal and

equitable relief pursuant to applicable local, state and federal law.

**JURISDICTION AND VENUE**

3.       This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 and

§1343 and 42 U.S.C. §2000e-5(f)(3) because this action involves federal questions regarding the

deprivation of Plaintiff's rights under Title VII, the PDA and the FMLA.  This Court has

supplemental jurisdiction over the Plaintiff's related claims arising under the Executive Law, the

NYCHRL, and any and all state and local law pursuant to 28 U.S.C. §1367(a).

4.       Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because the events

or omissions giving rise to this action, including the unlawful employment practices alleged

herein, occurred in this District, the Plaintiff resides in this District, and at least one Defendant

maintains a residence or office within the Southern District of New York.

5.       On or about January 28, 2019, the Plaintiff filed a charge of discrimination with

the United States Equal Employment Opportunity Commission ("EEOC"), which was cross-filed

with the New York State Division of Human Rights and the New York City Commission on

Human Rights, as against the Defendants complaining of pregnancy and gender/sex

discrimination, hostile work environment, retaliation and violations of Title VII, the PDA, the

Executive Law, the PWFA, the NYCHRL, the PFLIA and the FMLA as alleged herein.

6.      On or about July 1, 2019, the EEOC issued the Plaintiff a Notice of Right to Sue.

7.      The Plaintiff has commenced this federal lawsuit within ninety (90) days of the Plaintiff's receipt of the EEOC Notice of Right to Sue and as a result, the Plaintiff has fully complied with the administrative prerequisites of Title VII and all other applicable statutes.

## THE PARTIES

8.      The Plaintiff, Kristen Berly, is a 35 year old female and mother of three children, who resides in Peekskill, New York, in the County of Westchester.

9.      At all relevant times, the Plaintiff met the definition of an "employee" under all applicable statutes alleged herein.

10.     The Defendant, Gramercy Cardiac Diagnostic Services, P.C., provides a full spectrum of cardiovascular services to patients under the medical direction of cardiologist, Dr. Klaus Peter Rentrop.

11.     Gramercy Cardiac maintains a principal place of business at 131 West 35th Street, New York, NY 10001 and also operates offices in Queens, Brooklyn, and two locations in the Bronx.

12.     Gramercy Cardiac has employed fifteen or more employees for each working day in each of the twenty or more calendar weeks in the current or preceding calendar year and meets the definition of an "employer" under Title VII and all applicable statutes.

13.     Ms. Berly was directed to hold herself out as an employee of Gramercy Cardiac and was provided a "Gramercy Cardiac" email address with a signature line identifying her as the Medical Billing Collections/Precertification Manager for Gramercy Cardiac.

14.     Ms. Berly worked under the supervision and direction of the principals of Gramercy Cardiac and at the time of her hire, she was provided with an employee handbook entitled the "Gramercy Personnel & Benefits Guide" (the "Employee Handbook").

3

15.     Upon information and belief, the Defendant, Practice Builders Medical Management, LLC is affiliated with Gramercy Cardiac, and currently maintains a principal place of business at 131 West 35th Street, New York, NY 10001.

16.     Ms. Berly's paychecks were issued by Practice Builders; however, this was her only connection with Practice Builders and she viewed her employer as Gramercy Cardiac.

17.     Practice Builders has employed fifteen or more employees for each working day in each of the twenty or more calendar weeks in the current or preceding calendar year and meets the definition of an "employer" under Title VII and all applicable statutes.

18.     At all times relevant herein, the Defendant, Dr. Rentrop, was and still is a principal, employee, agent, policymaker and/or the President and/or Chief Executive Officer ("CEO") of Gramercy Cardiac.

19.     At all times relevant herein, the Defendant, Dr. Rentrop, was and still is a principal, employee, agent, policymaker and/or the managing member of Practice Builders.

20.     At all times relevant herein, the Defendant, Paul Strohmenger, was and still is the Chief Financial Officer ("CFO") and an employee, agent and policymaker of Gramercy Cardiac.

21.     Upon information and belief, at all relevant times herein, the Defendant, Strohmenger was the CFO and an employee, agent, and policymaker of Practice Builders.

22.     At all times relevant herein, the Defendant, Carlo Della Ragione, was the Chief Operating Officer ("COO") and an employee, agent and policymaker of Gramercy Cardiac.

23.     Upon information and belief, at all relevant times herein, the Defendant, Della Ragione, was the COO and an employee, agent, and policymaker of Practice Builders.

24.     The Defendant, InfoLink Management, Inc., maintains a principal place of business at 39 Cloverfield Road, Valley Stream, NY 11581.

25.     Upon information and belief, at all times relevant herein, InfoLink provided

4

consulting services to Gramercy Cardiac and/or Practice Builders.

26.     At all times relevant herein, the Defendant, Eileen Kenny, was and is the principal

and CEO of InfoLink, and provided consulting services to Gramercy Cardiac and/or Practice

Builders.

## FACTUAL ALLEGATIONS

**The Plaintiff Commences Employment with Gramercy Cardiac/Practice Builders:**

27.     The Plaintiff, Berly, was hired by the Defendants, Gramercy Cardiac and/or

Practice Builders (collectively "Gramercy", the "Company" or the "Employer"), as a full-time

Collection Specialist on September 11, 2012.

28.     As a Collection Specialist, Berly's duties included:  monitoring "aging reports"

for assigned insurance carriers; resolving denied and/or rejected insurance claims; reviewing,

collecting, and appealing unpaid insurance claims; inputting patient and insurance information

into Gramercy's computer system; processing refund requests for assigned insurance carriers;

and preparing medical reports in response to requests from assigned insurance carriers.

29.     When Ms. Berly commenced working for the Employer, her annual salary was

$43,000 per year.

30.     Prior to the events that led to the filing this Complaint, Ms. Berly had been

promoted several times and at the time of her termination on October 1, 2018, her salary had

grown to $75,000/year.

31.     Ms. Berly had always met or exceeded the requirements of each position she held

at the Employer and her performance reviews were always positive and reflected that she was:

a) "fantastic;" b) "great at her job;" c) "had the Company's best interests at heart;" and d) that

she was a "loyal" employee.

32.     At various points during her tenure with the Employer, each of the individual

Defendants, Dr. Rentrop, Strohmenger, Della Ragione and/or Kenny, maintained supervisory control over the Plaintiff's employment and/or day to day operations of the Company.

**Promotion No. 1:**

33.     In August 2015, Ms. Berly's immediate supervisor, Geneva Santos ("Santos"), went out on maternity leave and Berly was promoted from Collection Specialist to "Interim Department Supervisor."

34.     In the role of Interim Department Supervisor, Berly was assigned the additional tasks of:  reconciling bank statements and payments received by Gramercy; speaking with insurance carrier representatives with respect to non-payment of claims; training new employees; interacting with other Company departments in an effort to ensure that the Employer's policies and procedures were being followed; providing monthly reporting; and attending weekly meetings with CEO Rentrop, former CFO Renu Gill ("Gill"); and former COO, Natasha Bryant ("Bryant") (collectively "C-Level Management).

35.     At this point in her career with the Company, Ms. Berly reported to C-Level Management and managed a staff of between five to seven employees.

**Promotion No. 2:**

36.     In October 2015, when her supervisor, Santos, did not return from maternity leave, Berly was promoted again and formally assigned the title "Department Manager."

37.     In this position, Berly began working very closely with Dr. Rentrop and, upon information and belief, Dr. Rentrop started to significantly rely upon her for administrative and professional support.

38.     Between mid-2016 and 2017, Berly received both an $8,000 raise and a $5,000 bonus for her exceptional job performance.

**The Company Hires Strohmenger and retains Kenny/InfoLink as a Consultant:**

39.     In late 2017, Dr. Rentrop advised Berly that he intended to terminate Gill's employment at in 2018, and he asked Berly to stay after her normal business hours to assist him in interviewing Strohmenger, a prospective CFO.

40.     Dr. Rentrop, Strohmenger and Berly met for a significant amount of time, after normal business hours, to go over the Company's financials and operations.

41.     Strohmenger recommended that the Company engage Kenny, a consultant with InfoLink, to audit Gramercy's overall business operations.

42.     Thereafter, Dr. Rentrop requested Berly's presence when meeting with Kenny, whose company, InfoLink, was ultimately engaged as a consultant to supervise business operations at the Company.

43.     On December 25, 2017, Dr. Rentrop sent Berly a text message wishing her a Merry Christmas and stated "[t]his year has been the beginning of the turn around, and you have been an important part of it."

44.     In or about March 2018, Gill ultimately resigned, and the Company hired Strohmenger to replace her as CFO.

45.     Since Kenny and Strohmenger were unfamiliar with Gramercy's billing and information technology systems, Berly was given the added responsibility of training them.

46.     Berly was also asked to participate in C-Level Management meetings involving the anticipated terminations of Precertification Manager, Victoria Marin ("Marin"), and COO, Bryant, who both eventually resigned in March 2018.

47.     These executive decision-making duties were not typical of a Billing Department Manager, but, upon information and belief, Dr. Rentrop included Berly because he trusted her input and detailed knowledge of the Company's daily activities.

48.     During her career with the Company, Dr. Rentrop regularly requested that Berly take on additional managerial responsibility and handle more complex tasks, such as investigating insurance payment deficits and negotiating with various insurance companies to recover over $400,000 for the Company.

**Promotion No. 3:**

49.     After Marin left in late March 2018, Berly and Alise Banyai were charged with restructuring the Company's Precertification Department and Alisha Banyai [Alise's sister] was appointed interim manager of this department.

50.     Kenny participated in supervising the restructuring of the Precertification Department and expressed a high level of confidence in Berly and Alise Banyai.

51.     Specifically, Kenny sent an email to Berly and Alise Banyai which was copied to Dr. Rentrop and Strohmenger, commenting that "[y]ou ladies are fantastic" and starting Friday, "the department can start doing their jobs without nonsense or worry."

52.     In conjunction with the restructuring, Berly assisted Kenny, Strohmenger, and Dr. Rentrop in the search for a permanent manager for this department.

53.     The Company hired someone to fill the Precertification Manager position; however, he only lasted approximately three (3) weeks in this role before being terminated on April 20, 2018.

54.     A week later, Berly was promoted a third time and assigned the title "Billing and Precertification Manager."

55.     Berly received a $10,000 raise and Dr. Rentrop and Kenny formally recognized her for an outstanding job performance during a staff meeting.

56.     Within thirty (30) days of Berly's promotion, the Precertification Department became much more efficient and its overall numbers increased significantly.

57.     From this point forward, Ms. Berly was tasked with spearheading multiple projects and became more actively involved in the management of the Company and its day-to-day business operations.

**The Plaintiff Discloses her Pregnancy:**

58.     Once the Plaintiff's pregnancy became visible, she informed Dr. Rentrop of her intentions concerning childbirth and maternity leave.

59.     Ms. Berly was aware that New York instituted the PFLIA, on or about January 1, 2018, which required employers to provide employees with job-protected paid family leave ("PFL") to bond with a new child, and she discussed her plans to take PFL after she gave birth, with Dr. Rentrop.

60.     In addition, Berly sought an accommodation to her work schedule for a month after the PFL expired and requested that the Company permit her to work remotely from home, so that she could keep on top of her duties within the Billing and Precertification Departments, while continuing to bond and care for her infant.

61.     Ms. Berly was also qualified to take additional time off under the Family and Medical Leave Act and/or use the Paid Time Off ("PTO") she had accrued.

62.     During this conversation, Dr. Rentrop orally consented to the PFL and her accommodation request to work from home for an additional four weeks (hereinafter the "Oral Agreement"), but since Gramercy did not have a Human Resources department at this time, the Oral Agreement was not officially formalized, in writing.

63.     On or about April 5, 2018, Berly met with Strohmenger to discuss the patient accounts receivable aging reports in an effort to evaluate and develop a program to collect outstanding patient balances due and owing.

64.     Ms. Berly routinely provided these summary reports and met with C-Level

Management, on a weekly basis, to discuss the accounts receivable balances; however, the Company regularly instructed the Billing Department to concentrate on billing insurance claims; thus, the collection of some arrears, such as patient balances, was often deferred.

65.     C-Level Management was provided with all relevant billing reports on a weekly basis and was consistently kept abreast of all billing and/or collection issues since certain employee commissions were generated only upon ensuring that statistics such as PET and SPECT test services were billed accordingly, and matched the numbers provided by the marketing/tech department each month.

66.     During the April 2018 accounts receivable meeting with Strohmenger, Berly recommended that the Company hire someone to specifically focus on collecting outstanding "patient" account balances.

67.     This was not the first time C-Level Management disregarded Berly's recommendation to obtain assistance in collecting aging patient account balances.

68.     Instead, Strohmenger suggested that Gramercy retain a third-party collection agency to collect patient receivables, until the Company grew and a full-time employee could be added to the Billing Department, and he reiterated in an email to Berly that he and Kenny would utilize their resources to identify collection agencies.

69.     The Company, however, did not engage a third party collection agency, hire an additional employee, or take any steps to rectify the aging patient balances, so individual patient receivables remained an on-going issue at Gramercy.

70.     The Company has attempted to belatedly assert that these accounts receivable balances justified Berly's termination; however, this was an ongoing problem at Gramercy that Berly brought to the attention of C-Level Management on a regular basis.

**The Plaintiff is Assigned to Gramercy's Bronx/Eastchester Office:**

71.     In or about June 2018, Dr. Rentrop asked Ms. Berly to start reporting to Gramercy's Bronx office located on Eastchester Road ("B/E Office") to oversee this office's efficiency and to assess the performance of the front desk employees at that location.

72.     At this time, the Plaintiff was seven (7) months pregnant and since the B/E Office was an easier commute, the assignment was appreciated.

73.     From this point forward, Berly reported to the B/E Office on a daily basis; however, she was still required to attend weekly C-Level Management meetings at Gramercy's Manhattan location.

74.     Berly remained under the supervision of C-Level Management but was reporting to Kenny on a daily basis and was frequently in email/telephone contact with Kenny during this time period.

75.     While working at the B/E Office, Berly never missed a C-Level Management meeting she was required to attend nor did she arrive late to work without notifying Dr. Rentrop, Kenny, and/or C-Level Management.

76.     Berly sent regular emails to the staff with copies to Dr. Rentrop, Ragione, and Kenny, to alert them what office she would be working from that day.

77.     During June of 2018, the Plaintiff was also entrusted with the added duties of implementing standards of procedure, training staff, and generally assisting Della Ragione with the integration of Dr. Brown's office within Gramercy.

**The Company Organizes a Baby Shower to be Held in Ms. Berly's Honor:**

78.     On June 28, 2018, a baby shower was held in Ms. Berly's honor at Gramercy's Manhattan location.

79.     Kenny, Strohmenger, Ragione and various members of the Manhattan

11

Precertification and Billing Departments attended the baby shower.

80.     Ms. Berly received numerous, generous gifts from her supervisors and co-workers and sent an email thanking all of the participants.

**Negativity Grows as the Plaintiff's Due Date Grows Closer:**

81.     Ms. Berly was scheduled to have a Caesarean delivery on August 8, 2018 and it was her intention to work until August 7, 2018, the day before her surgery.

82.     Throughout July and as her due date grew closer, Berly began to feel a negativity building within C-Level Management and she became the target of Kenny's ire.

83.     On or about July 11, 2018, Kenny notified members of the B/E Office front desk staff that Berly was placed there to evaluate them and disparaged Berly to the staff.

84.     Upon information and belief, Kenny disclosed confidential information which had been discussed during C-Level Management meetings and was intentionally attempting to create tension between Berly and her subordinates.

85.     As Berly's PFL/maternity leave approached, Kenny and/or InfoLink was intent on minimizing the Plaintiff's responsibilities and painting her in a bad light to Dr. Rentrop and/or C-Level Management.

86.     Co-workers informed Berly that Kenny was disparaging her to C-Level Management and had falsely conveyed that the Precertification Department perceived her as verbally abusive.

87.     Speculating that Kenny's hostility and volte-face was motivated by her impending PFL/maternity leave, the Plaintiff sent an email to C-Level Management to report Kenny's lack of professionalism, discriminatory conduct and harassment.

88.     Initially, Dr. Rentrop responded to Berly's claims via text message, noting Kenny's inappropriate "tone," and commenting that he understood her concerns and had made

his "own observations" as to what was occurring.

89.    This support was short-lived, however, and it soon became clear that the Employer had no intention of holding Berly's position open during her PFL/maternity leave and that Dr. Rentrop, Strohmenger, and Della Ragione were aiding and condoning the harassment and abusive, discriminatory conduct.

90.    Upon information and belief, the Defendants were intent on forcing Ms. Berly to resign before she left on PFL and Kenny and/or InfoLink was charged with effectuating the harassment and maltreatment of the Plaintiff.

**The Plaintiff's PFL Commences:**

91.    As a dedicated employee, Berly continued to work at Gramercy until August 7, 2018, the day before she was scheduled for Caesarean surgery.

92.    Despite her imminent surgery, Berly was instructed to report to Gramercy's Manhattan office on August 7, 2018, for a meeting with C-Level Management.

93.    Almost immediately upon leaving that day, the Company revoked Berly's email access and changed her desktop computer login credentials.

94.    These impulsive, punitive actions not only caused chaos within the departments Berly managed, but they are indicative of the Company's premeditated plans to sever its employment relationship with Berly once she left on PFL/maternity leave.

95.    Berly's co-workers and subordinates continued to contact her throughout August 2018, and complained that since her departure, they were overworked, understaffed, and subject to a poor working environment at Gramercy.

96.    Members of her department informed her of Kenny's unprofessional behavior and that every issue that arose while she was out on PFL was being blamed on Ms. Berly.

97.    Even though Berly volunteered to respond to C-Level Management inquiries;

process billing from home; and/or otherwise assist her team while out on PFL, Gramercy shut

her out completely and let the Billing and Precertification Departments fall into disarray.

**The Plaintiff Contacts HR Concerning the Oral Agreement:**

98.     On September 8, 2018, Berly sent an email to C-Level Management with a copy

to Joanna Dodaro ("Dodaro"), a representative of Atlantic Advisors, Gramercy's new Human

Resources provider ("HR"), to confirm the Oral Agreement she had reached with Dr. Rentrop

and the requested accommodation to her work schedule seeking permission to work remotely for

four (4) weeks, once the PFL expired on October 3, 2018.

99.     Berly intended to physically return to the office on November 1, 2018, but she

sought an accommodation to work from home from October 3, 2018 through October 31, 2018

so that she could continue to recuperate from childbirth and care for her infant.

100.     Neither HR nor C-Level Management responded to the September 8, 2019 email.

101.     Once it appeared that the Company was going to rescind the Oral Agreement and

deny her the requested work schedule accommodation, the Plaintiff began communicating with

HR directly to arrange to use her remaining accrued PTO and/or request FMLA leave, prior to

her physical return on November 1, 2018.

102.     Ms. Dodaro confirmed, via an email dated September 10, 2018, that any time off

taken pursuant to the FMLA would be job protected.

103.     On or about September 13, 2018, Ms. Berly received a phone call from a

colleague, who informed her that Kenny was continuing to disparage her and had publicized

additional confidential conversations that had occurred during C-Level Management meetings.

104.     Kenny and/or InfoLink accused Berly of various things that were patently untrue

and disclosed confidential communications to staff members stating that Berly was responsible

for either the termination or discipline of certain former employees.

14

105.     Since Berly was out on PFL and intentionally alienated from the Company, she grew frustrated that she was unable to defend herself against such malicious, manufactured claims, and that the goodwill she had built with Dr. Rentrop and C-Level Management, throughout her career, was being intentionally tarnished.

**The Plaintiff Files a Formal Complaint in Accordance with the Employee Handbook:**

106.     In accordance with Gramercy's Employee Handbook, complaints of harassment, discrimination and issues with co-workers were to be reported to an administrator appointed as the "Equal Opportunity Compliance Officer" or to Dr. Rentrop, if applicable, and such individual "will investigate the matter and take appropriate action."

107.     Since Gramercy did not have an Equal Opportunity Compliance Officer at that time, on September 14, 2018, Berly emailed a formal complaint to Dr. Rentrop, HR, and C-Level Management, to report the defamatory conduct and hostile work environment being created by Kenny and/or InfoLink (the "Complaint").

108.     On September 17, 2018, HR responded to Berly's Complaint by stating that at Gramercy, allegations of discrimination and harassment are taken very seriously, and a full investigation would be conducted.

109.     At no point did HR, Dr. Rentrop or anyone from Gramercy Cardiac, Practice Builders, InfoLink or C-Level Management interview Ms. Berly about her Complaint or take any steps indicative of a formal investigation.

110.     While the Complaint was pending, HR informed the Plaintiff that as long as she completed the medical certification with her doctor and timely returned the paperwork to Gramercy, she would qualify for FMLA from October 3, 2018 through October 31, 2018.

111.     Berly submitted the completed FMLA paperwork on or about September 25, 2018 and awaited a response from HR concerning the request to utilize her remaining PTO in addition

to taking FMLA leave, in an effort to reduce the financial burden on her family once it became clear that Gramercy was not going to honor the Oral Agreement or approve her work schedule accommodation request.

112.    Four (4) days elapsed with no response and with her PFL nearing its end, Berly emailed HR on September 28, 2018, seeking clarity and/or confirmation regarding her PTO/FMLA status.

113.    Ms. Dodaro responded later that day by email and requested to speak with Berly, via telephone, on Monday, October 1, 2018.

**The Company Retaliates and Terminates the Plaintiff While Still on PFL:**

114.    On October 1, 2018, received a call from HR Representative, Leah Riegel, who notified her that her employment with Gramercy was terminated, effective immediately.

115.    On October 1, 2018, Berly was not provided with a reason for her termination.

116.    To date, there has been nothing to indicate that Gramercy ever conducted an investigation into Berly's HR Complaint regarding the Company, Kenny and/or InfoLink and the termination resulted immediately upon the Plaintiff seeking clarity with regard to her work schedule accommodation request and/or FMLA status.

117.    By letter dated October 3, 2018, Berly received formal notice of her termination which reinforced the effective termination date of October 1, 2018, two days before her PFL officially expired.

118.    The termination occurred while Berly was still on job-protected PFL pursuant to the PFLIA and awaiting a response for FMLA leave.

119.    The Plaintiff's PFL Payment History confirms that PFL payments were made from August 8, 2018 through and including October 2, 2018, the day after she was terminated.

120.    The Company has admitted, in prior proceedings, that the Plaintiff's termination

occurred while Ms. Berly was still on job-protected PFL.

121.   No formal reprimand or disciplinary action had ever been taken against Ms. Berly prior to her invoking her rights pursuant to the PFLIA and/or the FMLA and/or opposing the Employer's violation of local, state and federal employment laws.

122.   Prior to leaving on PFL, the Plaintiff was in good standing with the Employer; she had been promoted numerous times; and her compensation nearly doubled in the six (6) years she was employed with the Company.

123.   Berly followed the procedure outlined in Gramercy's Employee Handbook to report her complaints of harassment, discrimination and the hostile work environment instigated by Kenny and/or InfoLink; yet, no investigation took place and the Company's resolution was to terminate Berly while she was still on PFL.

124.   Prior to taking PFL and filing the HR Complaint, Ms. Berly was well-liked at Gramercy, and had been rewarded with significant salary raises, bonuses, additional responsibilities, and promotions, due to her superior job performance.

125.   The Plaintiff's termination was premeditated and in violation of the protections afforded by the PFLIA, the FMLA, and all related local, state and federal employment laws.

126.   The Defendants intentionally and unreasonably discriminated against the Plaintiff due to her sex/gender and the conditions and/or disabilities that arose due to her pregnancy.

127.   The Defendants intentionally and unreasonably discriminated and retaliated against the Plaintiff for filing a complaint of harassment and hostile work environment with HR, with the full knowledge that it is illegal to punish an employee for complaining that her rights, under the law, were being violated.

128.   The individual Defendants participated in the retaliation and conduct giving rise to the gender/pregnancy discrimination claim.

129.    The individual Defendants harbored personal animosity toward the Plaintiff for reporting the conduct of Kenny and/or InfoLink and intentionally aided and abetted the discrimination, retaliation, and decision to fire Ms. Berly because she opposed and refused to submit to the illegal conduct alleged herein.

130.    Gramercy Cardiac, Practice Builders, InfoLink and the individual Defendants have engaged in pattern and practice of intentionally discriminating against pregnant females by, *inter alia,* prematurely revoking their email and computer privileges while out on maternity leave; compelling pregnant employees to continue administering X-rays and/or other diagnostic tests involving radiation despite risks to the fetus; and/or refusing to provide requested accommodations such as work schedule flexibility, reassignment, bathroom breaks, and/ or protective clothing/equipment.

131.    Berly's supervisor, Santos, experienced much of the same mistreatment discussed herein during her pregnancy, and, upon information and belief, Santos' email was also cut-off prematurely and she was "written up" for fabricated performance issues prior to maternity leave in an attempt to force her to resign.

132.    Dr. Rentrop discussed firing Santos, while she was on maternity leave, rather than hold her job open, and that the Company often discriminated against pregnant females, particularly in managerial positions.

133.    The Company and specifically, Dr. Rentrop, refused to accommodate another pregnant female whose doctor advised that she should not be exposed to radiation or perform certain diagnostic tests during her pregnancy.

134.    Gramercy Cardiac, Practice Builders, InfoLink and the individual Defendants have engaged in pattern and practice of intentionally retaliating against pregnant female employees who complain about harassment, discrimination and/or the work environment at the

18

Company.

135.    Ms. Berly faced harassment and discrimination due to her pregnancy and was

terminated in retaliation for taking leave pursuant to the PFLIA/FMLA; for requesting time to

bond with her infant under the PFLIA/FMLA; and for filing a formal complaint with HR; all in

violation of local, state and federal employment laws.

136.    Upon information and belief, the Defendants are continuing to retaliate, defame,

harass and discriminate against the Plaintiff by disparaging her to the Company and its staff

and/or potential employers; providing adverse job references; and preventing her from obtaining

suitable employment by maintaining a false and inaccurate personnel file.

137.    The Plaintiff has suffered damages including, including but not limited to:  loss of

employment and related benefits such as back pay, front pay, health care and other employment

benefits; exposure to emotional distress and physical injuries, *e.g.* stress, anxiety, sleep

deprivation, stomach ailments, hives, etc.; loss of employment opportunities and damage to her

reputation, career and professional development.

138.    Accordingly, the Plaintiff seeks injunctive and declaratory relief, punitive

damages, liquidated damages, penalties, costs, attorneys' fees and such other and further relief as

is permitted under the relevant federal, state and local employment laws.

**THE FIRST CLAIM FOR RELIEF**
**Discrimination and Harassment in Violation of Title VII and the PDA**
**(Against Gramercy Cardiac and Practice Builders)**

139.    The Plaintiff repeats, reiterates and re-alleges each and every allegation contained

in Paragraphs 1 through 138 of this Complaint as if fully set forth herein.

140.    By the acts and practices set forth above, including but not limited to:

intentionally creating and/or encouraging and condoning a hostile work environment for the

Plaintiff and other female employees because of their sex/gender and/or pregnancy and ignoring

19

the Plaintiff's continual complaints of discrimination and harassment, Gramercy Cardiac and/or Practice Builders discriminated against the Plaintiff in the terms and conditions of her employment in violation of Title VII and the PDA.

141.    Gramercy Cardiac, Practice Builders, InfoLink, Dr. Rentrop, Strohmenger, Della Ragione, and/or Kenny had actual and/or constructive knowledge of the Company, Kenny and/or InfoLink's harassment, defamation and/or discriminatory conduct toward Ms. Berly based upon her sex/gender and/or pregnancy as well as the hostile work environment created.

142.    Gramercy Cardiac, Practice Builders, InfoLink and agents, Dr. Rentrop, Strohmenger, Della Ragione, and/or Kenny had a duty to act on such actual knowledge and prevent, eradicate and/or remedy the harassment and discriminatory conduct of the Company, Kenny, and/or InfoLink.

143.    Dr. Rentrop, Strohmenger, Della Ragione, and/or Kenny are sufficiently high enough in the Company's management hierarchy and are charged with the duty to act on their knowledge and stop the discrimination, harassment and/or to inform the Company of the employment violations.

144.    Gramercy Cardiac, Practice Builders, InfoLink, Dr. Rentrop, Strohmenger, Della Ragione, and/or Kenny had an individual and/or affirmative duty to investigate and/or remedy the complaints of the Plaintiff.

145.    Kenny and/or other representatives/agents of InfoLink intentionally caused and/or attempted to cause Ms. Berly's employer to discriminate and retaliate against her and participated and/or condoned the harassment and discriminatory conduct.

146.    These Defendants had actual or constructive notice of Ms. Berly's complaints but failed to take prompt remedial action, to eradicate the Company, Kenny, and/or InfoLink's actions, omissions and unlawful behavior.

147.    Title VII prohibits employment practices that discriminate against any person with respect to compensation, terms, conditions, or privileges of employment because of the individual's race, color, religion, sex or national origin.

148.    The PDA amended Title VII's definition of discrimination "because of sex" to include discrimination of or on the basis of pregnancy, childbirth, or related medical conditions.

149.    The PDA mandates that women affected by pregnancy, childbirth or related medical conditions shall be treated the same for all employment-related purposes, including the receipt of benefits under fringe benefit programs, as other people not so affected, but similar in their ability to work.

150.    The Defendants' discriminated against the Plaintiff in violation of Title VII and the PDA when they revoked her email access, changed her desktop computer login credentials, and denied her the receipt of benefits under the Company's fringe benefit program while out on PFLIA/FMLA maternity leave.

151.    The Defendants' discriminated against the Plaintiff in violation of Title VII and the PDA when they refused to permit Berly to work from home, insofar as such benefit of employment had been provided to non-pregnant employees in similar positions.

152.    The Defendants' discriminated against the Plaintiff in violation of Title VII and the PDA when they terminated her for taking leave pursuant to New York City, state, and federal programs that are designed to protect pregnant females and mothers of newborn infants.

153.    As a direct and proximate result of the hostile work environment and these Defendants' unlawful discriminatory conduct and acts in violation of Title VII and the PDA, the Plaintiff has suffered and will continue to suffer irreparable injury, damage to her career and reputation, monetary and/or economic harm, including but not limited to:  loss of past and future income, wages, compensation, seniority and other benefits of employment for which she is

21

entitled to an award of monetary damages, costs, attorneys' fees, and other relief.

154.    As a direct and proximate result of the hostile work environment and these Defendants' unlawful discriminatory conduct and acts in violation of Title VII and the PDA, the Plaintiff has suffered and will continue to suffer severe mental and physical anguish, including but not limited to:  emotional distress, physical injuries, stress, anxiety, humiliation, embarrassment, emotional and physical pain and suffering, loss of self-esteem and self-confidence, and depression, for which she is entitled to an award of monetary damages, as well as injunctive and other declaratory relief.

155.    The unlawful discriminatory actions by Gramercy Cardiac, Practice Builders, InfoLink, and any and all agents of the employer were intentional and with reckless disregard to the Plaintiff's federally protected rights and, as such, constitute malicious, willful and wanton violations of Title VII and the PDA for which she is entitled to an award of punitive damages.

### THE SECOND CLAIM FOR RELIEF
### Retaliation in Violation of Title VII and the PDA
### (Against Gramercy Cardiac and Practice Builders)

156.    The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in Paragraphs 1 through 155 of this Complaint as if fully set forth herein.

157.    By the acts and practices set forth above, and, more particularly, rescinding Berly's email access and changing her desktop computer login credentials in a premeditated manner and terminating the Plaintiff's employment while she was out on job-protected PFL, Gramercy Cardiac and Practice Builders, retaliated against Ms. Berly for requesting a work schedule accommodation due to her pregnancy/childbirth; taking job-protected childcare/maternity leave; for filing a Complaint with HR; and for otherwise opposing unlawful employment practices in violation of Title VII and the PDA.

158.    By the acts and practices set forth above, and, more particularly, failing to

investigate her Complaint to HR concerning employment law violations and the harassment, defamation and discriminatory conduct of the Company, Kenny and/or InfoLink, the Defendants retaliated against the Plaintiff in violation of Title VII and the PDA.

159.    As a direct and proximate result of these Defendants' unlawful retaliatory conduct in violation of Title VII and the PDA, the Plaintiff has suffered and will continue to suffer irreparable injury, damage to her career and reputation, monetary and/or economic harm, including but not limited to:  loss of past and future income, wages, compensation, seniority, and other benefits of employment for which she is entitled to an award of monetary damages and other injunctive and/or declaratory relief.

160.    As a direct and proximate result of these Defendants' unlawful retaliatory conduct and acts in violation of Title VII and the PDA, the Plaintiff has suffered and will continue to suffer severe mental and physical anguish, including but not limited to:  emotional distress, physical injuries, stress, anxiety, humiliation, embarrassment, emotional and physical pain and suffering, loss of self-esteem and self-confidence, and depression, for which she is entitled to an award of monetary damages, costs, attorneys' fees, and other relief.

161.    The unlawful retaliatory actions by Gramercy Cardiac, Practice Builders, InfoLink and any and all agents of the employer were intentional and with reckless disregard to the Plaintiff's federally protected rights and, as such, constitute malicious, willful and wanton violations for which she is entitled to an award of punitive damages.

### THE THIRD CLAIM FOR RELIEF
### Discrimination and Harassment in Violation of the New York Executive Law
### (Against All Defendants)

162.    The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in Paragraphs 1 through 138 of this Complaint as if fully set forth herein.

163.    By the acts and practices set forth above, including but not limited to:  creating,

participating, encouraging, inducing, condoning, authorizing and/or ratifying the harassment, discrimination and hostile work environment of the Plaintiff and other female employees because of their sex/gender and pregnancy and ignoring the Plaintiff's complaints of discrimination and harassment, the Defendants discriminated against the Plaintiff in the terms and conditions of her employment in violation of the Executive Law.

164.    Gramercy Cardiac, Practice Builders, InfoLink, Dr. Rentrop, Strohmenger, Della Ragione, and/or Kenny had actual or constructive knowledge of Kenny and/or InfoLink's harassment, defamations and/or discriminatory conduct toward Ms. Berly based upon her sex/gender and/or pregnancy and the hostile work environment.

165.    The Defendants had a duty to act on such knowledge and prevent, eradicate and/or remedy the harassment and discriminatory conduct of the Company, Kenny, and/or InfoLink.

166.    Gramercy Cardiac, Practice Builders, Dr. Rentrop, Strohmenger, Della Ragione, InfoLink and/or Kenny had an individual and/or affirmative duty to investigate and/or remedy the complaints of the Plaintiff.  It was not objectively reasonable for these Defendants to believe that their actions did not violate the clearly established statutory and/or constitutional rights of the Plaintiff.

167.    Kenny and/or other representatives and agents of InfoLink intentionally caused and/or attempted to cause Ms. Berly's employer to discriminate and retaliate against her and participated and/or condoned the harassment and discriminatory conduct.

168.    The Defendants had actual and/or constructive notice of Ms. Berly's complaints but failed to take prompt remedial action or eradicate the actions, omissions and unlawful behavior of the Company, Kenny and/or InfoLink and, thereby, participated, condoned and/or encouraged the discrimination and harassment.

169.    The Defendants were on notice that there was a likelihood that the Company, Kenny, and/or InfoLink's conduct would place other women at an unreasonable risk of harassment and/or discrimination based upon prior complaints and incidents involving pregnant employees of the Company.

170.    The individual Defendants aided, abetted, incited, compelled and/or coerced the discrimination against the Plaintiff and the commission of such unlawful discriminatory employment practices and are personally liable for their actions under the "aiding and abetting" clause of the Executive Law.

171.    As a direct and proximate result of the hostile work environment and these Defendants' unlawful discriminatory conduct and acts in violation of the Executive Law, the Plaintiff has suffered and will continue to suffer irreparable injury, damage to her career and reputation, monetary and/or economic harm, including but not limited to:  loss of past and future income, wages, compensation, seniority, tenure and other benefits of employment for which she is entitled to an award of monetary damages, costs, attorneys' fees, and other relief.

172.    As a direct and proximate result of the hostile work environment and these Defendants' unlawful discriminatory conduct and acts in violation of the Executive Law, the Plaintiff has suffered and will continue to suffer severe mental and physical anguish, including but not limited to:  emotional distress, physical injury, stress, anxiety, humiliation, embarrassment, emotional and physical pain and suffering, loss of self-esteem and self-confidence, and depression, for which she is entitled to an award of monetary damages and other injunctive and/or declaratory relief.

## THE FOURTH CLAIM FOR RELIEF
### Retaliation in Violation of the New York Executive Law
#### (Against All Defendants)

173.    The Plaintiff repeats, reiterates and re-alleges each and every allegation contained

in Paragraphs 1 through 138 and 162 through 172 of this Complaint as if fully set forth herein.

174.    By the acts and practices set forth above, and, more particularly, rescinding Berly's email access and changing her desktop computer login credentials in a premeditated manner and terminating the Plaintiff's employment while she was out on job-protected PFL, Gramercy Cardiac and Practice Builders, retaliated against Ms. Berly for taking job-protected maternity leave, for filing a Complaint with HR, and for opposing unlawful employment practices in violation of the Executive Law.

175.    By the acts and practices set forth above, and, more particularly, failing to investigate her Complaint to HR concerning employment law violations and the harassment, defamation and discriminatory conduct of the Company, Kenny and/or InfoLink, the Defendants retaliated against the Plaintiff in violation of Executive Law.

176.    Gramercy Cardiac, Practice Builders, Kenny and/or InfoLink, Dr. Rentrop, Strohmenger and Della Ragione all intentionally retaliated against Ms. Berly for her complaints in opposition to the unlawful employment practices and harassed and intimidated Ms. Berly by condoning and encouraging Kenny and/or InfoLink's discriminatory, defamatory and/or improper behavior.  It was not objectively reasonable for these Defendants to believe that their actions did not violate the clearly established statutory or constitutional rights of the Plaintiff.

177.    The individual Defendants aided, abetted, incited, compelled and/or coerced the retaliation against the Plaintiff and the retribution she faced for reporting the commission of such unlawful discriminatory employment practices and are personally liable under the "aiding and abetting" clause of the Executive Law.

178.    As a direct and proximate result of the Defendants' unlawful retaliatory conduct in violation of the Executive Law, the Plaintiff has suffered and will continue to suffer irreparable injury, damage to her career and reputation, monetary and/or economic harm,

including but not limited to: loss of past and future income, wages, compensation, seniority, tenure and other benefits of employment for which she is entitled to an award of monetary damages, costs, attorneys' fees, and other relief.

179.    As a direct and proximate result of these Defendants' unlawful retaliatory conduct and acts in violation of the Executive Law, the Plaintiff has suffered and will continue to suffer severe mental and physical anguish, including but not limited to: emotional distress, physical injury, stress, anxiety, humiliation, embarrassment, emotional and physical pain and suffering, loss of self-esteem and self-confidence, and depression, for which she is entitled to an award of monetary damages and other relief.

## THE FIFTH CLAIM FOR RELIEF
### Discrimination and Harassment in Violation of the NYC Human Rights Law & PWFA
### (Against All Defendants)

180.    The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in Paragraphs 1 through 138 of this Complaint as if fully set forth herein.

181.    The Company maintains its principal place of business within New York City and is subject to the NYCHRL and the PWFA.

182.    By the acts and practices set forth above, including but not limited to: creating, participating, encouraging, inducing, condoning, authorizing and/or ratifying the harassment, discrimination and hostile work environment of the Plaintiff and other female employees because of their sex/gender and pregnancy and ignoring the Plaintiff's complaints of discrimination and harassment, the Defendants discriminated against the Plaintiff in the terms and conditions of her employment in violation of the NYCHRL and the PWFA.

183.    Gramercy Cardiac, Practice Builders, InfoLink, Dr. Rentrop, Strohmenger, Della Ragione, and/or Kenny had actual or constructive knowledge of Kenny and/or InfoLink's harassment, defamations and/or discriminatory conduct toward Ms. Berly based upon her

27

sex/gender and/or pregnancy and the hostile work environment.

184.    The Defendants had a duty to act on such knowledge and prevent, eradicate and/or remedy the harassment and discriminatory conduct of the Company, Kenny, and/or InfoLink.

185.    Gramercy Cardiac, Practice Builders, Dr. Rentrop, Strohmenger, Della Ragione, InfoLink and/or Kenny had an individual and/or affirmative duty to investigate and/or remedy the complaints of the Plaintiff.  It was not objectively reasonable for these Defendants to believe that their actions did not violate the clearly established statutory and/or constitutional rights of the Plaintiff.

186.    Kenny and/or other representatives and agents of InfoLink intentionally caused and/or attempted to cause Ms. Berly's employer to discriminate and retaliate against her and participated and/or condoned the harassment and discriminatory conduct.

187.    The Defendants had actual and/or constructive notice of Ms. Berly's complaints but failed to take prompt remedial action or eradicate the actions, omissions and unlawful behavior of the Company, Kenny and/or InfoLink and, thereby, participated, condoned and/or encouraged the discrimination and harassment.

188.    The Defendants were on notice that there was a likelihood that the Company, Kenny, and/or InfoLink's conduct would place other women at an unreasonable risk of harassment and/or discrimination based upon prior complaints and incidents involving pregnant employees of the Company.

189.    The individual Defendants aided, abetted, incited, compelled and/or coerced the discrimination against the Plaintiff and the commission of such unlawful discriminatory employment practices and are personally liable for their actions in aiding and abetting the NYCHRL and the PWFA violations.

190.   As a direct and proximate result of the hostile work environment and these Defendants' unlawful discriminatory conduct and acts in violation of the NYCHRL and the PWFA, the Plaintiff has suffered and will continue to suffer irreparable injury, damage to her career and reputation, monetary and/or economic harm, including but not limited to:  loss of past and future income, wages, compensation, seniority, tenure and other benefits of employment for which she is entitled to an award of monetary damages, costs, attorneys' fees, and other injunctive and/or declaratory relief.

191.   As a direct and proximate result of the hostile work environment and these Defendants' unlawful discriminatory conduct and acts in violation of the NYCHRL and the PWFA, the Plaintiff has suffered and will continue to suffer severe mental and physical anguish, including but not limited to:  emotional distress, physical injury, stress, anxiety, humiliation, embarrassment, emotional and physical pain and suffering, loss of self-esteem and self-confidence, and depression, for which she is entitled to an award of monetary damages and other injunctive and/or declaratory relief.

192.   The unlawful discriminatory actions and violations of the NYCHRL and the PWFA by Gramercy Cardiac, Practice Builders, InfoLink and any and all individual Defendants and/or agents of the employer were engaged with willful or wanton negligence, or recklessness, or a conscious disregard of the Plaintiff's rights and the rights of others, or conduct so reckless as to amount to such disregard, for which she is entitled to an award of punitive damages.

**THE SIXTH CLAIM FOR RELIEF**
**Retaliation in Violation of the New York City Human Rights Law & PWFA**
**(Against All Defendants)**

193.   The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in Paragraphs 1 through 138 and 180 through 192 of this Complaint as if fully set forth herein.

194.   By the acts and practices set forth above, and, more particularly, rescinding

Berly's email access and changing her desktop computer login credentials in a premeditated manner and terminating the Plaintiff's employment while she was out on job-protected PFL, Gramercy Cardiac and Practice Builders, retaliated against Ms. Berly for taking job-protected maternity leave, for filing a Complaint with HR, and for opposing unlawful employment practices in violation of the NYCHRL and the PWFA.

195.    By the acts and practices set forth above, and, more particularly, failing to investigate her Complaint to HR concerning employment law violations and the harassment, defamation and discriminatory conduct of the Company, Kenny and/or InfoLink, the Defendants retaliated against the Plaintiff in violation of the NYCHRL and the PWFA.

196.    Gramercy Cardiac, Practice Builders, Kenny and/or InfoLink, Dr. Rentrop, Strohmenger and Della Ragione all intentionally retaliated against Ms. Berly for her complaints in opposition to the unlawful employment practices and harassed and intimidated Ms. Berly by condoning and encouraging Kenny and/or InfoLink's discriminatory, defamatory and/or improper behavior.  It was not objectively reasonable for these Defendants to believe that their actions did not violate the clearly established statutory or constitutional rights of the Plaintiff.

197.    The individual Defendants aided, abetted, incited, compelled and/or coerced the retaliation against the Plaintiff and the retribution she faced for reporting the commission of such unlawful discriminatory employment practices and are personally liable for their actions in aiding and abetting the NYCHRL and the PWFA violations.

198.    As a direct and proximate result of the Defendants' unlawful retaliatory conduct in violation of the NYCHRL and the PWFA, the Plaintiff has suffered and will continue to suffer irreparable injury, damage to her career and reputation, monetary and/or economic harm, including but not limited to:  loss of past and future income, wages, compensation, seniority, tenure and other benefits of employment for which she is entitled to an award of monetary

damages, costs, attorneys' fees, and other injunctive and/or declaratory relief.

199.    As a direct and proximate result of these Defendants' unlawful retaliatory conduct and acts in violation of the NYCHRL and the PWFA, the Plaintiff has suffered and will continue to suffer severe mental and physical anguish, including but not limited to:  emotional distress, physical injury, stress, anxiety, humiliation, embarrassment, emotional and physical pain and suffering, loss of self-esteem and self-confidence, and depression, for which she is entitled to an award of monetary damages and other relief.

200.    The unlawful retaliatory actions and violations of the NYCHRL and the PWFA by Gramercy Cardiac, Practice Builders, InfoLink and any and all individual Defendants and/or agents of the employer were engaged with willful or wanton negligence, or recklessness, or a conscious disregard of the Plaintiff's rights and the rights of others, or conduct so reckless as to amount to such disregard, for which she is entitled to an award of punitive damages.

### THE SEVENTH CLAIM FOR RELIEF
### Violation of the Family and Medical Leave Act
### (Against all Defendants)

201.    The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in Paragraphs 1 through 138 of this Complaint as if fully set forth herein.

202.    The Plaintiff qualified to take leave under the FMLA as an employee who worked for the Employer for at least a year and a minimum of 1,250 hours over the twelve (12) months preceding her request for FMLA leave.

203.    The Company employs at least fifty (50) employees within 75 miles of the Plaintiff's place of employment and must comply with the provisions of the FMLA.

204.    The Plaintiff communicated her desire to take FMLA leave to medically recover from childbirth and to bond with her infant, to HR, the Company and the individual Defendants.

205.    The Plaintiff filed the requisite FMLA paperwork with HR and/or the Company.

31

206.   The Plaintiff was terminated while awaiting a response to her application for FMLA leave in violation of the FMLA.

207.   At no point, did the Company designate, in writing, that the Plaintiff's PFLIA and FMLA leave was required to be taken concurrently.

208.   Each of the Defendants had knowledge of the protections afforded by the FMLA and showed a willful and/or reckless disregard for whether his/her/its conduct was prohibited by the law.

209.   Gramercy Cardiac, Practice Builders, Dr. Rentrop, Della Ragione, Strohmenger, Kenny and/or InfoLink all qualify as "employers" under the FMLA insofar as each of the Defendants exercised control over the Plaintiff's employment and the decision to terminate her after invoking her rights to the benefits of the FMLA.

210.   The Defendants' decision to terminate the Plaintiff was causally connected to her request for benefits and invocation of her rights pursuant to the FMLA in applying for time off to recover from childbirth and bond with her infant.

211.   By the above acts and practices, Gramercy Cardiac, Practice Builders and the individual Defendants have willfully and maliciously discriminated and retaliated against the Plaintiff for invoking her rights under the provisions of the FMLA.

212.   As a direct and proximate result of retaliation and retribution by these Defendants in violation of the FMLA, the Plaintiff has suffered and will continue to suffer irreparable injury, damage to her career and reputation, monetary and/or economic harm, including but not limited to:  loss of past and future income, wages, compensation, seniority, and other benefits of employment, as well as, emotional distress, physical injury, and physical pain and suffering, for which she is entitled to an award of monetary damages, liquidated damages, costs, attorneys' fees, and other equitable, declaratory, and/or injunctive relief.

32

## THE EIGHTH CLAIM FOR RELIEF
### Violation of New York State's Paid Family Leave Insurance Act
### (Against All Defendants)

213.    The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in Paragraphs 1 through 138 of this Complaint as if fully set forth herein.

214.    The Plaintiff was qualified to take paid family leave under the PFLIA.

215.    The Plaintiff communicated her desire to take PFLIA leave to medically recover from childbirth and to bond with her infant, to HR, the Company and the individual Defendants.

216.    The Plaintiff filed the requisite PFLIA paperwork with HR and/or the Company and was approved for PFLIA leave.

217.    The Plaintiff was terminated on October 1, 2018, while still on job protected PFLIA leave.

218.    The Plaintiff received PFLIA payments until October 2, 2018.

219.    At no point, did the Company designate, in writing, that the Plaintiff's PFLIA and FMLA leave was required to be taken concurrently.

220.    Under the PFLIA, the Plaintiff was entitled to return to her same or a comparable job upon completion of the PFL period.

221.    Under the PFLIA, an employer is liable for retaliation if it terminates the employee; discontinues the employee's health insurance; reduces an employee's pay or benefits; and/or disciplines an employee, while the employee is out on job protected PFL.

222.    Each of the Defendants had knowledge of the protections afforded by the PFLIA and showed a willful and/or reckless disregard for whether his/her/its conduct was prohibited by the law.

223.    Gramercy Cardiac, Practice Builders, Dr. Rentrop, Della Ragione, Strohmenger, Kenny and/or InfoLink all qualify as "employers" under the PFLIA insofar as each of the

Defendants exercised control over the Plaintiff's employment and the decision to terminate her after invoking her rights to PFLIA benefits.

224.    The Defendants' decision to terminate the Plaintiff was causally connected to her invocation of her rights pursuant to the PFLIA and applying for time off to recover from childbirth and bond with her infant.

225.    By the above acts and practices, Gramercy, Practice Builders and the individual Defendants have willfully and maliciously discriminated and retaliated against the Plaintiff for invoking her rights under the provisions of the PFLIA.

226.    As a direct and proximate result of retaliation and retribution by these Defendants in violation of the PFLIA, the Plaintiff has suffered and will continue to suffer irreparable injury, damage to her career and reputation, monetary and/or economic harm, including but not limited to: loss of past and future income, wages, compensation, seniority, and other benefits of employment, as well as, emotional distress, physical injury, and physical pain and suffering, for which she is entitled to an award of monetary damages, penalties, liquidated damages, costs, attorneys' fees, and/or other equitable, declaratory, and/or injunctive relief.

**THE NINTH CLAIM FOR RELIEF**
**Intentional Infliction of Emotional Distress**
**(Against All Defendants)**

227.    The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in Paragraphs 1 through 226 of this Complaint as if fully set forth herein.

228.    Based on the foregoing, the Defendants have engaged in conduct toward the Plaintiff that is extreme and outrageous so as to exceed the bounds of decency in a civilized society as it was done in a deliberate, callous, malicious and oppressive manner with the intent to harm the Plaintiff; was with an evil motive amounting to malice, spite, animosity and bias; and was done in conscious disregard of the Plaintiff's rights.

34

229.    Among other conduct, the Defendants' pervasive pattern of harassment, discrimination and retaliation both in the underlying claims and in the manner by which she was terminated in violation of local, state and federal law, together with the tolerance and encouragement of the hostile and abusive treatment of the Plaintiff and other pregnant females at Gramercy, constitutes extreme and outrageous conduct that exceeds the bounds of decency in a civilized society.

230.    By their actions and conduct, the Defendants intended and did intentionally or recklessly cause the Plaintiff to suffer and continue to suffer humiliation, anxiety, physical harm/injury, and emotional distress.

231.    As a direct and proximate result of the Defendants' conduct, the Plaintiff has suffered and continues to suffer severe emotional distress, for which she is entitled to an award of monetary damages and other relief.

232.    The Defendants' extreme and outrageous conduct was knowing, malicious, intentional, willful and wanton, entitling the Plaintiff to an award of punitive damages.

### **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff prays for judgment against the Defendants, jointly and severally, as follows:

A.    Declaring that the acts and practices complained of herein are in violation of Title VII, the PDA, the FMLA, the Executive Law, the PFLIA, the PWFA, the NYCHRL and any and all other applicable local, state and federal laws; and/or

B.    Enjoining and permanently restraining the Defendants from continuing to engage in such unlawful employment practices and from further violating the Plaintiff's rights in the future by, *inter alia,* providing negative, misleading and/or disparaging references pertaining to the Plaintiff's employment and/or inaccurately maintaining the Plaintiff's personnel file; and/or

C.      Directing the Defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect the Plaintiff's employment opportunities, including the removal of all emails, letters of reprimand, and/or associated negative documentation from the Plaintiff's personnel file; and/or

D.      Directing the Defendants to reinstate the Plaintiff or place the Plaintiff in the position she would have been in but for the Defendants' discriminatory and retaliatory treatment of her, and to make her whole for occupational and reputational damage, including but not limited to restoring her personnel file to the state it was prior to reporting the unlawful employment practices and/or actively assisting the Plaintiff in her efforts to obtain future employment; and/or

E.      Awarding damages, in an amount to be determined at trial, plus prejudgment interest, to compensate the Plaintiff for all monetary and/or economic damages, including but not limited to, back pay, front pay, additional wages and compensation, bonuses, equity interests, out-of-pocket expenses, pension/retirement benefits, seniority, raises, health insurance reimbursement, life insurance and/or any and all other benefits of employment; and/or

F.      Awarding damages, in an amount to be determined at trial, plus prejudgment interest, to compensate the Plaintiff for all non-monetary and/or compensatory damages, including but not limited to, compensation for physical injury, emotional distress, mental anguish, humiliation, embarrassment, stress, anxiety, and all physical and emotional pain and suffering; and/or

G.      Awarding damages, in an amount to be determined at trial, plus prejudgment interest, to compensate the Plaintiff for the harm to her professional and personal reputations and loss of career fulfillments; and/or

H.      Awarding punitive damages to deter the Defendants and others from engaging in

36

similar conduct, to the fullest extent permitted by law; and/or

      I.      Awarding reasonable attorney's fees to the fullest extent permitted by law;

      L.      Awarding liquidated damages and/or assessing penalties to the fullest extent permitted by law; and/or

      K.      Awarding the Plaintiff the costs and disbursements she has incurred in this action, including witness and expert fees; and/or

      L.      Awarding the Plaintiff such pre and post judgment interest as is permitted by law; and/or

      M.      Granting such other and further relief, both special and general, as this Court deems just and proper and to which the Plaintiff may be justly entitled.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Plaintiff demands a trial by jury of this action.

Dated: Tarrytown, New York
       September 19, 2019

                      MITCHELL POLLACK & ASSOCIATES, PLLC
                      Attorneys for Plaintiff, Kristen Berly

By.:                                
                      Eileen M. Burger, Esq. (EB3002)
                      150 White Plains Road, Suite 310
                      Tarrytown, New York  10591
                      (914) 332-0700
                      (914) 332-9191 (fax)
                      eburger@mpollack.com